DIANA CLINE EBRON, ESQ.
Nevada Bar No. 10580
E-mail: diana@kgelegal.com
JACQUELINE A. GILBERT, ESQ.
Nevada Bar No. 10593
E-mail: jackie@kgelegal.com
KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
E-Mail: karen@kgelegal.com
KIM GILBERT EBRON
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
Telephone: (702) 485-3300
Facsimile: (702) 485-3301
*Attorneys for SFR Investments Pool 1, LLC*

**UNITED STATES DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| NATIONSTAR MORTGAGE, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> FLAMINGO TRAILS NO. 7 LANDSCAPE MAINTENANCE ASSOCIATION, INC.; SFR INVESTMENT POOL 1, LLC; DOE INDIVIDUALS I-X, inclusive; and ROE CORPORATIONS I-X, inclusive, <br><br> Defendants. <br><br> SFR INVESTMENTS POOL 1, LLC, a Nevada limited liability company, <br><br> Counter-claimant, <br><br> vs. <br><br> NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company, <br><br> Counter-defendant. | Case No.: 2:15-cv-01268-RFB-NJK <br><br> **MOTION FOR A PROTECTIVE ORDER RELATING TO THE RULE 30(b)(6) DEPOSITION OF SFR INVESTMENTS POOL 1, LLC** |

SFR Investments Pool 1, LLC, by and through its counsel, Kim Gilbert Ebron, hereby moves this Court for a protective order pursuant to FRCP 26(c) to limit the scope of Nationstar Mortgage, LLC's ("Nationstar") deposition of SFR's 30(b)(6) witness.

///

- 1 -

**CERTIFICATION OF COUNSEL PURSUANT TO LR 26-7**

I, Karen L. Hanks, hereby declare as follows:

1. On or about February 22, 2016, my office was served with an Amended Notice of Rule 30(b)(6) Deposition of SFR Investments Pool 1, LLC in the above-entitled matter. A true and correct copy of the Deposition Notice is attached hereto as **Exhibit 1.**

2. Prior to this Notice, SFR had received numerous deposition notices from Akerman, LLP, counsel for Nationstar, in similar HOA foreclosure sale dispute cases. With respect to those notices, Darren Brenner, a partner at Akerman, and I conducted several LR 26-7 conferences and EDCR 2.34 conferences on certain topics to which SFR objected.

3. One such LR 26-7 conference took place on November 12, 2015, and it related to a case that is currently pending before this Court, Case No. 2:15-cv-01373-APG-NJK. The topics we discussed at the November 12, 2015 LR 26-7 conference included Topics 2 and 10 that are the subject of this Motion.

4. After counsel and I were unable to come to an agreement as to Topics 2 and 10 (as well as other topics), I filed a Motion for Protective Order before this Court.

5. On December 31, 2015, after the parties fully briefed the issue, this Court issued a protective order, which included protecting Topics 2 and 10. See Dkt. 52 of Case No. 2:15-cv-01373-APG-NJK.

6. Because Mr. Brenner and I continued to disagree as to various topics, around December 2015 through today's date, I was filing, and continue to file various motions for protective order both in state and federal court. In that regard, counsel and I have conducted five LR 26-7 conferences/EDCR 2.34 conferences on these same topic areas.

7. Mr. Brenner had represented to me that he was not going to require that I file a motion for protective order in every case, but still wanted an individual ruling from each respective Magistrate or Discovery Commissioner. Melanie Morgan, the counsel assigned to this case, also made the same representation to me.

8. With that understanding in mind, I went on to file no less than seven motions for protective order on the same topics that are currently disputed by this Motion. In each and every

- 2 -

case, I received the protective order I sought, with two cases still pending. Protective orders have been granted by this Court, Magistrate Judge Leen, Commissioner Bonnie Bulla, Commissioner Chris Beecroft, Jr. and Judge Boulware.[1]  Motions are currently pending before Magistrate Judge Ferenbach and Hoffman.

9. Not only did both Mr. Brenner and Ms. Morgan represent I would not need to file a motion in each case, they actually abided by this Court's ruling as well as other Court's rulings for depositions of SFR that occurred after the protective order was granted.

10. With this in mind, on February 23, 2016, I emailed opposing counsel Melanie Morgan and confirmed that this Court's prior protective order still applied to Topics 2 and 10. I did not receive a response.

11. Then on Sunday, March 6, 2016, Darren Brenner emailed me and basically explained that he was no longer keeping his word, and that he would not abide by this Court's prior ruling for this case.

12. As a result, on March 8, 2016, I conducted another LR 26-7 conference with Darren Brenner and Natalie Winslow.

13. Mr. Brenner explained that he believed Topics 2 and 10 were relevant because of the bona fide purchaser issue. Mr. Brenner explained he wants to know the individual owners because he believes their knowledge is imputed to SFR.

14. I explained that I have yet to see case law that indicates a parent company's knowledge is imputed upon a subordinate company, but even so, SFR was the company on the ground floor that was here in Nevada and purchasing properties at HOA foreclosure auctions. As such, SFR's knowledge is the only relevant knowledge.

15. Also, after Mr. Brenner explained that he wants to know if the individual owners had any sophistication when it came to HOA foreclosure sales, I explained that sophistication of a buyer has no bearing on whether the buyer was a bona fide purchaser. I explained we have

---

[1] The Motion in which Judge Boulware ruled was in front of Magistrate Judge Foley, but Judge Boulware decided to issue an order on the Motion for Protective Order at a hearing he was conducting on a Motion to Dismiss in the same case.

**KIM GILBERT EBRON**
7625 DEAN DRIVE DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

California law that holds this and recognizes that these types of sales, i.e. foreclosure sales, attract a certain pool of buyers, typically investors, so if sophistication was a factor no buyer would qualify as a bona fide purchaser.

16. Mr. Brenner offered to limit the topic to questions about the role of David Rosenberg, Howard Kim and Barbara Rosenberg.

17. Both Mr. Rosenberg and Mr. Kim are attorneys, and have acted as SFR's counsel.

18. I am unaware of Mrs. Rosenberg's affiliation with SFR or its parent companies.

19. Regardless, I explained to Mr. Brenner even if he learned that the Rosenbergs and Mr. Kim had ownership interest in SFR, this still does not bear on the issue of bona fide purchaser.

20. I do not know if the Rosenbergs have any ownership interest in SFR, but Mr. Kim has testified he does not.

21. After a lengthy discussion, counsel and I were unable to resolve our dispute.

22. Given the short notice in which I learned that counsel would not abide by this Court's prior ruling, SFR plans to attend the deposition today, but not answer questions regarding Topics 2 and 10 until this Court issues an order.

23. I explained this to Mr. Brenner, and he did not object.

24. Between exchanging emails on this subject, participating in the LR 26-7 conference and drafting the instant Motion, I have billed 4.7 hours. My hourly rate is $350.00.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Dated this 8th day of March, 2016.

*/s/ Karen L. Hanks*
Karen L. Hanks

- 4 -

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  PREFATORY STATEMENT

This is an Association foreclosure sale title dispute. SFR purchased real property commonly known as 4230 Quilting Bear Street, Las Vegas, Nevada 89147 (the "Property") at an Association foreclosure sale. On July 6, 2015, Nationstar filed a Complaint against SFR seeking to quiet title, claiming that the Association foreclosure did not extinguish the first deed of trust. On July 31, 2015, SFR filed its answer and counter-claim for quiet title. SFR seeks to quiet title in its name on the basis that the Association foreclosure sale extinguished the first deed of trust.

In the present case, SFR objects to the following Rule 30(b)(6) topics:

2. All records form prior to the subject HOA foreclosure sale, including, but not limited to statements of account and property records SFR maintains regarding the Property.

10. SFR's corporate structure, from 2012 to the present, including:

a. The identity and location of SFR's principals, managers, members, officers, and investors;

b. The identity and location of any of SFR's parent or subsidiary corporations and affiliates, and the principals, managers, members, officers, investors of those entities;

c. The identity of any wholly or partially owned subsidiary of SFR, as well as any company or corporation over which SFR exerts control or otherwise participates or has participated in the management or direction of SFR;

d. The role, if any, of SFR Investments, LLC, with SFR Investments Pool 1, LLC or its affiliated corporations, and the identity of SFR Investments principals, principals, managers, members, officers, and investors, from 2012 to present:

e. The role, if any, of SFR Funding, LLC, with SFR Investments Pool 1, LLC or its affiliated corporations, and the identity of SFR Funding, LLC's principals, principals, managers, members, officers and investors;

f. The role, if any, of Xiemen Limited Partnership, with SFR Investments Pool 1, LLC or its affiliated corporations, and the identity Xiemen Limited Partnership's principals, principals, managers, members, officers and investors;

g. The identity of SFR's sources of operating capital;

- 5 -

     h. The content and application of SFR's operation agreement(s) and articles incorporation from 2012 to present.

See Exhibit 1.

## II.  LEGAL ARGUMENT

### A.  This Court Should Issue a Protective Order Under FRCP 26(c)(4).

Pursuant to FRCP 26(c)(4), a party may seek a protective order to protect it from "annoyance, embarrassment, oppression, or undue burden," by requesting inquiry into certain matters be forbidden. Under FRCP 26(b)(1), the general scope of discovery includes non-privileged matters that are "relevant to any party's claim or defense and proportional to the needs of the case…" Relevant evidence for purposes of FRCP 26 is defined as "information 'reasonably calculated to lead to the discovery of admissible evidence." Survivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005) (quoting Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992). While the relevancy standard under FRCP 26 is broad, it still requires that the information sought bears on an issue in the case or could lead to information that bears on an issue in the case. Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A., 254 F.R.D. 568, 575 (N.D. Cal. 2008).

**Topic 2**

**All records form prior to the subject HOA foreclosure sale, including, but not limited to statements of account and property records SFR maintains regarding the Property.**

This topic which seeks information about "all records, including…statements of account…regarding the Property," has nothing to do with whether SFR or Nationstar is entitled to quiet title. Nothing that has occurred post-sale with respect to the Property has anything to do with SFR's claim for quiet title or Nationstar's defenses or claims for that matter. This category is so broadly written it potentially includes every document SFR has regarding the Property. But what SFR has done with the Property, i.e. repairs, payment of taxes, etc. has no relevance to any issues in this case. As such, this topic should be protected.

- 6 -

**Topic 10**

Opposing counsel claims that this topic and its subparts bear on the issue of SFR's status as a bonfa fide purchaser. Under Nevada law, a BFP purchases real property: (i) for value; and (ii) without notice of a competing or superior interest in the same property. Berge v. Fredericks, 591 P.2d 246, 247 (Nev. 1979). A "purchaser for value" is one who has given "valuable consideration" as opposed to receiving the property as a gift. Id. at 248; Allen v. Webb, 485 P.2d 677, 680 (Nev. 1971) ("A specific finding of what the consideration was may be implied from the record."). Even if a purchaser may purchase a property for lower than the property's value on the open market, as long as some consideration was paid, it is considered valuable. Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp, Inc., 132 Nev. Adv. Op. 5, ___ P.3d ___, 2016 WL 347979 at *10 (Jan. 28, 2016) (citing Fair v. Howard, 6 Nev. 304, 308 (1871) ("the question is not whether the consideration is adequate, but whether it is valuable"); see also Poole v. Watts, 139 Wash, App. 1018 (2007) (unpublished disposition) (stating that the fact that the foreclosure sale purchaser purchased the property for a "low price" did not in itself put the purchaser on notice that anything was amiss with the sale).)

Additionally, the experience of the purchaser does not automatically defeat bona fide purchaser status. Melendrez v. D & I Inv., Inc., 127 Cal. App. 4th 1238, 1252, 26 Cal. Rptr. 3d 413, 425 (2005). In Melendrez, the California Court of Appeals concluding, "[W]e see no reasoned basis for a blanket rule that would preclude a buyer from being a BFP simply because he or she has experience in foreclosure sales and purchases property at less than fair market value." The Melendrez court further explained, "[t]he law is designed to protect outside buyers who part with value and have no knowledge or notice of a defect. In this respect, the presumption of section 2924 affords protection to the novice and experienced foreclosure buyer alike, and 'was clearly designed to provide incentives to the public at large to attend the sales in order to obtain a better price at the sale.'" Melendrez, at 426 quoting Homestead Savings v. Darmiento 230 Cal.App.3d 424, 434, 281 Cal.Rptr. 367 (1991).

The Melendrez court concluded, "[a] holding that an experienced foreclosure buyer perforce cannot receive the benefits of the law as a BFP if he or she buys property for substantially

less than its value would chill participation at trustees' sales by this entire class of buyers, and, ultimately, could have the undesired effect of reducing sales prices at foreclosure. We conclude therefore that the proper standard to determine whether a buyer at a foreclosure sale is a BFP is whether the buyer (1) purchased the property *for value,* and (2) had *no knowledge or notice* of the asserted rights of another. Melendrez, at 426.

Further, notice by a potential purchaser that an association is conducting a sale pursuant to NRS 116, and that the potential exists for challenges to the sale "post hoc[,]" do not preclude that purchaser from BFP status. Shadow Wood, at *9-11.

Given Nevada law, the topics as written and as explained by counsel in the meet and confer do not bear on the issue of bona fide purchaser status, or any other issue in this case for that matter.

This topic seeks a plethora of information regarding SFR and some corporations connected and not connected to SFR that has no relevance to the issue of BFP status. This topic, including its subparts, is so broad that it even asks for information that is potentially confidential and proprietary in that it seeks information regarding investors. While Nationstar claims it seeks information about these parent entities' knowledge about the Association sale, SFR has no control or authority over these entities. One of the purposes of a 30(b)(6) deposition is to produce a witness that will bind the corporation on certain topic areas. However, here, the topic asks for information about different companies to which SFR has no authority over. For instance, the subparts ask about other companies' officers, members, managers and investors.  This is too burdensome and not relevant to Nationstar's claim that SFR was not a BFP. Likewise, subpart (g), which asks about SFR's sources of operating capital has no bearing on whether SFR was a BFP. Frankly, the topic as written does not even address the issue counsel indicated the topic sought to address i.e. BFP status.

Moreover, SFR has answered countless times about its knowledge regarding the facts and circumstances surrounding the sale, and it was SFR who attended the sale in this case. To that end, SFR has admitted that at the time it purchased this property, and all the other HOA foreclosed properties, that it was aware of the risk of litigation because banks/lenders were disputing whether their respective deeds of trust were extinguished. SFR will also testify in this case that it was not

- 8 -

aware of any pre-sale disputes that may have occurred between Nationstar and the HOA/Collection Company prior to the sale. It was also SFR who researched this property prior to attending and bidding at the auction. As such, any knowledge that may negate BFP status (although none exists) belongs to SFR, and SFR alone. As such, topic 10 is nothing more than a fishing expedition and should be protected.

Based on the foregoing, SFR asks this Court to enter a protective order prohibiting Nationstar from inquiring into Topic 2 and 10.

### B. This Court Should Issue Sanctions Against Akerman, LLP Pursuant to 28 U.S.C. § 1927.

Pursuant to 28 U.S.C. § 1927, "[a]ny attorney…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." In the present case, SFR has already filed a motion for protective order before this Court on the very issues in dispute and addressed by this Motion. Akerman, LLP agreed that SFR would only have to file one motion per Judge, and even abided by this agreement for months. Now, what can only be viewed as vexatious, Akerman, LLP forced SFR to file the same exact motion on the same exact issues before this Court. If that were not enough, Akerman, LLP is the same firm to which Judge Boulware disallowed these very topics. This ruling was just issued about two weeks ago in Case No. 2:15-cv-01021.

There is absolutely no reason for such conduct. The conduct merely added to the costs of this litigation and took time away from undersigned counsel that she should have been spending on other cases.  In fact, undersigned counsel brought up this very issue in response to Akerman, LLP's Sunday email and indicated she believed filing the same exact motion before the same exact judge was a complete waste of time for both SFR, herself, and the Court. This is particulalry true in light of the fact that Akerman, LLP's reason for needing the discovery has not changed. Nothing has changed. Even Judge Boulware has heard this issue, so even if Akerman, LLP thought they could challenge this Court's ruling, Judge Boulware has concluded the same as this Court; these topics do not bear on the issues in these cases.

As a result, SFR requests that sanctions in the amount of $1,645.00. Said amount represents the time spent by counsel exchanging emails on this issue, participating in an LR 26-7 conference and drafting the instant Motion. To the extent this Court issues briefing on this issue, undersigned counsel anticipates incurring another $700 in drafting the Reply. As such, SFR seeks $2,345 in sanctions against Akerman, LLP.

DATED this 8th day of March, 2016.

**KIM GILBERT EBRON**

*/s/ Karen L. Hanks*_____
KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
*Attorneys for SFR Investments Pool 1, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of March, 2016, pursuant to pursuant to FRCP 5, I served via the CM-ECF electronic filing system the foregoing **MOTION FOR A PROTECTIVE ORDER RELATING TO THE RULE 30(b)(6) DEPOSITION OF SFR INVESTMENTS POOL 1, LLC**, to the following parties:

Melanie D. Morgan
melanie.morgan@akerman.com

Ariel E. Stern
ariel.stern@akerman.com

Christine M. Parvan
christine.parvan@akerman.com

/s/ *Karen L. Hanks*
An employee of Kim Gilbert Ebron

- 10 -