DIANA CLINE EBRON, ESQ.
Nevada Bar No. 10580
E-mail: diana@kgelegal.com
JACQUELINE A. GILBERT, ESQ.
Nevada Bar No. 10593
E-mail: jackie@kgelegal.com
KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
E-mail: karen@kgelegal.com
KIM GILBERT EBRON
7625 Dean Martin Drive, Suite 110
Las Vegas, NV 89139
Telephone: (702) 485-3300
Facsimile: (702) 485-3301
*Attorneys for SFR Investments Pool 1, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC,<br><br>Plaintiff,<br>vs.<br><br>FLAMINGO TRAILS NO. 7 LANDSCAPE MAINTENANCE ASSOCIATION, INC.; SFR INVESTMENTS POOL 1, LLC; DOE INDIVIDUALS I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>Defendants. | Case No.: 2:15-cv-01268-RFB-NJK<br><br>**RESPONSE TO MOTION TO COMPEL DEPOSITION OF CHRISTOHER HARDIN** |
| SFR INVESTMENTS POOL 1, LLC, a Nevada limited liability company,<br><br>Counter-Claimant,<br>vs.<br><br>NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company,<br><br>Counter-Defendant. | |

SFR Investments Pool 1, LLC ("SFR") and Christopher Hardin, individually, hereby oppose the Motion to Compel Deposition of Christopher Hardin filed by Nationstar Mortgage, LLC ("Nationstar" or the "Bank") for the following reasons: (1) Christopher Hardin was not subpoenaed even though Nationstar admitted they seek testimony from him as a fact/percipient witness, not as the manager of SFR; (2) on March 8, 2016, Nationstar deposed the 30(b)(6) witness for SFR who answered all questions as it related to SFR's attendance at the Association sale; (3)

- 1 -

based on prior conduct of opposing counsel, SFR genuinely believes that the notice is nothing more than a ploy to ask question of Mr. Hardin far beyond the facts of the sale; and (4) allowing the deposition of Mr. Hardin merely because he attended the Association sale will create an undue burden on SFR because it will undoubtedly open the door for him to be deposed as a witness in every active case.

## DECLARATION OF KAREN L. HANKS IN SUPPORT OF RESPONSE

I, Karen L. Hanks, hereby declare as follows:

1. On or about February 22, 2016, my office was served with a Notice of Deposition of Christopher J. Hardin ("Hardin Notice") in the above-entitled matter. A true and correct copy of the Hardin Notice is attached hereto as **Exhibit 1.** This date was unilaterally set by opposing counsel.

2. Also, on that same date, Nationstar served my office with a Notice of Deposition of 30(b)(6) Witness of SFR (the "SFR Notice"). A true and correct copy of the SFR Notice is attached hereto as **Exhibit 2.**

3. The deposition of SFR's 30(b)(6) witness was previously scheduled for February 18, 2016, but Nationstar canceled the deposition one day before the date set for the deposition, and then unilaterally set this new date and time.

4. As a result, on February 23, 2016, I emailed opposing counsels, Melanie Morgan, Ariel Stern and Tenesa Scaturro and explained that (1) we did not believe it was appropriate to notice Mr. Hardin's deposition as we believed non-parties must be subpoenaed; and (2) I was not available on the date and time set for SFR's deposition. I also identified two topic areas in the SFR Notice that should not be included as this Court already protected those topic areas in another case which issued an identical deposition notice.

5. Ms. Morgan responded to the first concern raised in my email with a South Dakota case that seemed to indicate that an officer or manager of a party-corporation could be noticed for deposition; that a subpoena was not required. However, the case also indicated that the party must choose between noticing the officer/manager or a 30(b)(6) witness for the corporation; the party does not get both.

- 2 -

6. Given that Nationstar had noticed both Mr. Hardin's deposition and the 30(b)(6) witness of SFR, I proceeded to schedule an LR 26-7 conference so we could attempt to resolve the issue. After conferring with Ariel Stern we agreed to hold the conference on Friday, February 26, 2016 at 2 p.m.

7. On the date set for the LR 26-7 conference, however, Mr. Stern emailed me explaining that he had to cancel our meet and confer. Given that I was in trial the week of March 1 and Mr. Stern was out of town on March 1-2, the next available date to conduct the LR 26-7 was Thursday, March 3, 2016.

8. Because I was still in trial, Diana Cline Ebron, from my office, participated in the LR 26-7 conference with Mr. Stern on March 3, 2016. Her declaration detailing the LR 26-7 conference is attached hereto as **Exhibit 3.**

9. In or around June 2015, SFR hired Paulina Kelso to perform various tasks, two of which included attending depositions as SFR's 30(b)(6) witness and assist in preparing written discovery responses.

10. Prior to this time period, Chris Hardin, the manager of SFR, was designated as the 30(b)(6) witness of SFR, however, the increase in volume of litigation made it impossible for Mr. Hardin to keep up with this demand on his time. SFR is a closely held LLC with Mr. Hardin being the sole manager who is responsible for running the day-to-day operations of SFR.

11. Since June 2015 to the present, Ms. Kelso, as the 30(b)(6) designee of SFR, has been deposed approximately 60 times, and I have attended each and every deposition.

12. Because of the sheer volume of cases currently pending where SFR is a named party, all of which involve Association lien sale disputes, on average, SFR is deposed three times per week. There have been occasions where SFR has been deposed once every day in a given week, with some days involving back to back depositions. A mere two weeks ago, SFR was deposed 10 times in one week.

13. As part of her preparation for any given deposition, Ms. Kelso reviews pertinent documents in the property file, reviews pertinent documents regarding the Association sale, talks to the other staff of SFR and talks to Chris Hardin. She has also met with Robert Diamond, a

- 3 -

former employee of SFR who attended sales on behalf of SFR between June 2012 and October 2012.

14. In all the approximately 70 depositions where Ms. Kelso was the 30(b)(6) witness, no party has ever filed a motion to compel claiming Ms. Kelso testimony was insufficient.

15. Even in this case Nationstar has not claimed that Ms. Kelso's testimony was insufficient, and Nationstar deposed her back on March 8, 2016.

16. I discussed the LR 26-7 conference with my colleague, Mrs. Ebron, and she informed me that Nationstar sought the deposition of Mr. Hardin as a fact witness because he attended the Association sale of the subject Property.

17. The deposition of Mr. Hardin will not shed light on what occurred at the sale because Mr. Hardin does not recall any details of the sales he attended on behalf of SFR.

18. This has been the consistent testimony of Ms. Kelso, and I have personally heard Mr. Hardin give this same testimony when I attended his depositions prior to Ms. Kelso's being hired.

19. Additionally, given past and current conduct of Nationstar's counsel, I genuinely believe that they seek much more than simply Mr. Hardin's recollection of the subject Association sale. Time and time again, Nationstar's counsel has sought information beyond the topic areas listed in their deposition notices including, but not limited to, Mr. Hardin's employment, the source of SFR's capital, the identities of SFR's investors, and information about SFR's parent companies, just to name a few.

20. In fact, I have had to file no less than seven (7) motions for protective order to reign in the overboard and irrelevant topic areas Nationstar's counsel routinely includes in their deposition notices, one of which was filed with this Court. In each and every case, I was granted the protective order I sought.[1]

---

[1] There is only on exception to this where a state court discovery commissioner allowed a question about who David Rosenberg is and who Howard Kim is. Also, recently state court Judge Kephart allowed questions into SFR's corporate structure, overruling his prior affirmance of Commissioner Beecroft's protection of this topic. In all other respects, and consistent with the other rulings, I received the protective order.

- 4 -

21. Despite this, Nationstar's counsel has not given up on seeking this irrelevant information, and now their newest attempt to obtain this information is through countless subpoenas to every person that ever served as manager of SFR regardless of the time period, subpoenas to SFR's parent companies, subpoenas duces tecum to SFR's parent entities, subpoenas to secretaries who helped file corporate paperwork, Chris Hardin individually, and astonishingly, the mother of one of SFR's attorneys.

22. Specifically, in an action pending in state court, Nationstar's counsel issued deposition subpoenas and subpoenas duces tecum to the following entities/persons: (1) SFR Funding, LLC; (2) SFR Investments, LLC; (3) Lee Bucholtz; (4) David Tilem; (5) Corrine Lloyd; (6) Alexandra Delatorre; (7) Chris Hardin; (8) Adam Bailey; (9) Ronald Smith; (10) Barbara Rosenberg; and (11) David Rosenberg.

23. David Rosenberg is one of SFR's attorney, and his mother who lives in California is Barbara Rosenberg. To this day, I have no clue as to why Nationstar's counsel subpoenaed the mother of an attorney other than Nationstar's stated belief that Mrs. Rosenberg either owned or invested in SFR.

24. SFR was forced to file a motion for protective order in that case, which was granted.

25. Given this conduct, I firmly believe Nationstar seeks much more than simply Mr. Hardin's recollection of the subject sale. Even so, this information was already garnered from Ms. Kelso during the March 8, 2016 30(b)(6) deposition of SFR. A true and correct copy of the March 8, 2016 deposition transcript is attached hereto as **Exhibit 4.**

26. In fact, during our renewed telephonic meet and confer which took place on May 12, 2016, I spoke with opposing counsels Tenesa Scaturro and Melanie Morgan. Once again, they indicated to me that they sought the deposition of Mr. Hardin merely as a fact witness because an announcement was allegedly made at the subject sale and they wanted his recollection of that announcement.

27. I explained that the 30(b)(6) already testified SFR, but more particularly, Mr.

- 5 -

Hardin, has no recollection of the sale itself.

28. Even so, I offered a deposition by written questions. I explained that if all Nationstar truly wanted was Mr. Hardin's recollection of the sale and whether an announcement was made, that this could be asked in the form of written questions. Opposing counsel declined.

29. This further solidified my concern that Nationstar is after more than they claim, and that allowing Mr. Hardin's deposition would create a slippery slope with counsel always demanding his deposition, as well as other Bank counsel demanding his deposition, which would effectively negate the whole reason why SFR hired Ms. Kelso in the first place, and which would create an undue burden on SFR.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Dated this 26th day of May, 2016.

/s/ Karen L. Hanks
Karen L. Hanks

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   PREFATORY STATEMENT**

This is an Association foreclosure sale title dispute. SFR purchased real property commonly known as 4230 Quilting Bear Street, Las Vegas, NV 89147; Parcel No. 163-20-114-047 (the "Property") at an Association foreclosure sale. SFR seeks to quiet title in its name on the basis that the Association foreclosure sale extinguished the first deed of trust. Nationstar, the holder of the now extinguished first deed of trust, disputes that its lien was extinguished.

**II.   LEGAL ARGUMENT**

**A.   This Court Should Deny the Bank's Motion Because Mr. Hardin was Never Served with a Subpoena.**

FRCP 30(a)(1) permits a party to depose any person, including a party, without leave. The deponent's attendance may be compelled by subpoena under Rule 45. It is well-settled that a non-party deponent must be subpoenaed for deposition. See FRCP 45; 8A Wright & Miller § 2106 at pp. 504-5. Because Nationstar simply sent a Notice of Deposition for Mr. Hardin, a non-party,

- 6 -

SFR and Mr. Hardin promptly objected. In response, Nationstar cited a case from South Dakota that stood for the proposition that the Federal Rules of Civil Procedure allow for noticing an officer/manager of a party-corporation, rather than requiring a subpoena. See Atmosphere Hospitality Management, LLC v. Curtullo, 2015 WL 136120, No. 5:13-cv-05040, (D. South Dakota Western Division 2015). The Curtullo case, however, also made it clear that the option under the Rules was either notice the officer/manager of the party-corporation or notice the 30(b)(6) designee of the party corporation. Id. at *9 citing FRCP 30(a) and (b)(6); Cadent Ltd. v. 3M Unitek Corp., 232 F.R.D. 625, 627-28 (C.D.Cal.2005); United States v. Afram Lines Ltd., 159 F.R.D. 408, 413 (S.D.N.Y. 1994); Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 169 (S.D.N.Y. 1985).

In the present case, the Curtullo case does not apply because as Nationstar admits, it does not seek Mr. Hardin's deposition testimony as a manager/officer of SFR. Instead, Nationstar seeks Mr. Hardin's deposition as a percipient fact witness. Therefore, under FRCP 45, Nationstar seeks Mr. Hardin's deposition in his individual, non-party capacity and therefore a subpoena is required to compel his appearance at a deposition. Having not issued a subpoena, Nationstar is not entitled to an order compelling Mr. Hardin to appear for a deposition.

It is also worth noting there was never any agreement that the Notice to Mr. Hardin was sufficient. This belies reality. Once SFR received the Notice, it objected. Then it held an LR 26-7 conference, and then once the dispute was not resolved, it filed the instant Motion. Undersigned counsel even sent a confirming email to this effect after the LR 26-7 conference on March 3, 2016 wherein she stated, "[n]ow that you have clarified you believe Mr. Hardin is being called as a fact/percipient witness, I stand by my position that he needs to be subpoenaed." A true and correct copy of the email is attached hereto as **Exhibit 5**. In fact, it appears that even Nationstar believed this because they admit they tried to serve Mr. Hardin with a deposition subpoena first. Contrary to Nationstar's contention however, Mr. Hardin did not "evade" service, Nationstar just never served him. Nevertheless, having chosen the 30(b)(6) route, a deposition that has already taken place, the deposition of Mr. Hardin should be protected.

Even if Nationstar could back track from its representations in both meet and confers, they have already opted to depose the 30(b)(6) witness of SFR. This deposition took place on March 8, 2016. The Curtullo case upon which they rely clearly provides that the opposing party gets one or the other, but not both. See also Atmosphere Hospitality Management, LLC v. Curtullo, 2015 WL 136120, No. 5:13-cv-05040, *9 (D. South Dakota Western Division 2015) citing FRCP 30(a) and (b)(6); Cadent Ltd. v. 3M Unitek Corp., 232 F.R.D. 625, 627-28 (C.D.Cal.2005); United States v. Afram Lines Ltd., 159 F.R.D. 408, 413 (S.D.N.Y. 1994); Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 169 (S.D.N.Y. 1985). Here, having chosen the 30(b)(6) route, the deposition of Mr. Hardin cannot be compelled.

### B. This Court Should Deny the Bank's Motion Pursuant to FRCP 26(b)(2)(C) and FRCP 26(c)(4).

FRCP 26(b)(1) provides in relevant part that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…the parties' resources,…and whether the burden or expense of the proposed discovery outweighs its likely benefit." FRCP 26(b)(2)(C) further provides that the court must limit the…extent of discovery otherwise allowed by these rules…if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive…" Pursuant to FRCP 26(c)(4), a party may seek a protective order to disallow certain discovery to protect it from "annoyance, embarrassment, oppression, or undue burden or expense."

In the present case, Nationstar has already deposed the 30(b)(6) witness of SFR, and as such, has obtained all information bearing on SFR's attendance at the sale and its purchase of the Property. Additionally, the questions regarding the NAS script and whether the property was sold "as-is" or whether SFR knew there was pending litigation (a fact that has not even been established; this language comes from a script read by NAS and it is unclear whether it was even read at this sale or applied to this property) were not topic areas included in the deposition notice. As such, it is patently disingenuous of Nationstar to suggest SFR's witness did not know information when Nationstar did not list this information as topic areas. As evidenced by the deposition transcript,

SFR's counsel objected to scope for this very reason. Ex. 4, at 50:3-13. Regardless, after these questions, Mr. Brenner asked Ms. Kelso "[i]s that information you would expect Christ to have?" to which Ms. Kelso answered, "[w]hen I spoke to him about that day, if he remembered anything specifically about the sale, he stated he didn't remember." Id. at 50:15-22.

In other words, there is no need to depose Mr. Hardin, when Ms. Kelso has already answered the same questions. At best, Mr. Hardin's deposition would be cumulative. As evidenced by the Declaration of Karen L. Hanks, Ms. Kelso, as part of her preparation for any given deposition, reviews pertinent documents in the property file, reviews pertinent documents regarding the Association sale, talks to the other staff of SFR and talks to Chris Hardin. Not once has Nationstar or its counsel ever disputed the sufficiency of Ms. Kelso's prior testimony, or the testimony in this case.

If that were not enough, each and every time Mr. Hardin has been deposed (approximately 15 times, all of which occurred prior to hiring Ms. Kelso), and was asked questions about specific details regarding a particular sale, Mr. Hardin consistently testified he has no recollection as to what happened at any given sale. See Declaration of Chris Hardin attached hereto as **Exhibit 6**. In fact, in addition to the deposition, Nationstar also asked questions about the sale in the form of interrogatories. Specifically, Nationstar asked the following interrogatory to which SFR responded as follows:

**INTERROGATORY NO. 18:** With regard to the HOA Foreclosure Sale, please state the following:

(a) Describe how You learned of the HOA Foreclosure Sale;

(b) State whether the HOA or anyone at Nevada Association Services, Inc. told You of the opening bid price prior to the HOA Foreclosure Sale;

(c) Identify the opening bid price at the HOA Foreclosure Sale;

(d) Identify the bidders at the HOA Foreclosure Sale;

(e) Identify the amounts bid at the HOA Foreclosure Sale;

(f) Identify the amounts that You bid on the Property at the HOA Foreclosure Sale; and

      (g)      Describe Your method of calculating Your bid price at the HOA Foreclosure Sale.

**<u>RESPONSE TO INTERROGATORY NO. 18:</u>** Objection. These interrogatories are compound. In addition, these interrogatories seek confidential and proprietary business information. Further, this information is not relevant to the subject matter involved in the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, SFR answers:

      (a)      Objection. After reviewing the file with due diligence, SFR cannot recall how it learned about this specific sale, but SFR generally learned about the foreclosure sales through reviewing Nevada Legal News and Foreclosure Radar websites.

      (b)      Neither the HOA, nor anyone at Nevada Association Services, Inc., told SFR of the opening bid price prior to the HOA Foreclosure Sale.

      (c)      SFR does not recall the opening bid.

      (d)      SFR cannot identify the bidders at the HOA foreclosure sale.

      (e)      SFR does not recall the amounts bid at the HOA foreclosure sale.

      (f)      SFR does not recall the amounts it bid at the sale other than the final bid of $17,000.00.

      (g)      SFR does not utilize any specific method to calculate the price of a property before the foreclosure sale. The bid price was determined during the public sale based on the opening bid and considering other bids by other bidders.

<u>See</u> SFR Investments Pool 1, LLC's Objections and Responses to Nationstar Mortgage, LLC's Interrogatories attached hereto as **Exhibit 7.** These responses were signed and verified by Mr. Hardin. <u>Id.</u> p. 10.

As such, dragging Mr. Hardin to a deposition, only for him to testify, "I don't know" is a huge waste of time and money. Mr. Hardin is the sole manager of SFR and is extremely busy dealing with its day-to-day operations. He simply cannot afford to be dragged away from his responsibilities. This is particularly true in light of the fact that more and more of these cases are

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NV 89139
(702) 485-3300 FAX (702) 485-3301

going to trial, and already Mr. Hardin has had to devote time to trial.[2]

This is why SFR hired Ms. Kelso, to among other job duties, serve as SFR's 30(b)(6) witness so as to free up Mr. Hardin so he could focus on his job as manager of SFR. Ex. 6 at ¶ 2. SFR is currently the owner of approximately 650 properties and is responsible for managing these properties. Id. at ¶ 3. SFR also employs 8 people, who Mr. Hardin also manages. Id. at ¶ 4. SFR fears that if the deposition of Mr. Hardin is allowed in this case simply because he attended the sale (a fact that is the case for every sale attended by SFR from December 2012 to the present), Mr. Hardin will be deposed in every case that is in active litigation (the tally of which is at approximately 350 right now). Add this on top of other commitments required of litigation i.e. trial attendance, and Mr. Hardin is effectively pulled away from his primary role as manager of SFR.

To say this would create an undue burden on SFR is an understatement. Not to mention the burden it creates on the overall litigation by unnecessarily increasing depositions in each case, when one deposition will get the job done. While Nationstar claims it only seeks Mr. Hardin's deposition in this case, frankly, this is just lip service. In fact, Nationstar's counsel already noticed Mr. Hardin's deposition in another case, and SFR was forced to obtain a protective order, which was granted. In that case counsel represents U.S. Bank. Allowing the deposition of Mr. Hardin in this case will without a doubt create the "precedent" for Nationstar or any other bank to insist on Mr. Hardin's deposition in each and every case. This slippery slope must be quelled.

It is also doubtful that Nationstar seeks only Mr. Hardin's recollections of the sale because if this truly was the case, then they would have agreed to my offer of a deposition via written questions. The fact that Nationstar refused to agree to this less burdensome form of discovery is proof alone it seeks much more from Mr. Hardin. Inevitably, if Mr. Hardin's deposition is allowed, Nationstar's counsel will delve into much more than just his recollection of the sale; instead, it will most certainly attempt to do an end run around this Court and countless other Court's rulings that topics regarding SFR's affiliated corporate structures, identities of its members and investors, SFR's capital and other such topics are irrelevant and/or do not bear on the issues of the case.

---

[2] Mr. Hardin and undersigned counsel were in trial from March 2, 3, 4 and 7. Undersigned counsel is also currently in a trial that ran from April 19-22, with the last date occurring on May 16. Because of the huge time commitment for the first trial, Ms. Kelso attended the second trial.

- 11 -

### C. This Court Should Deny the Bank's Motion for Sanctions.

FRCP 37(d)(2) provides that the failure to appear for a deposition is excused if the party had a pending motion for protective order. Here, prior to the date and time set for Mr. Hardin's deposition, SFR and Mr. Hardin had a pending motion for protective order. Furthermore, Nationstar's counsel knew SFR objected to the Notice and intended to file a motion for protective order. As such, sanctions are not warranted in this case. In fact, Nationstar is not even entitled to their motion to compel because they never held an LR 26-7 conference based on Mr. Hardin's non-appearance. The only LR 26-7 conference held in this matter was the one instigated by SFR, and which took place on March 3, 2016, and the renewed one ordered by this Court.

### D. This Court Should Deny the Bank's Motion to Extend Discovery.

Discovery in this matter closed on March 13, 2016. Despite this, Nationstar never served a subpoena on Mr. Hardin, but instead issued a Notice of Deposition with less than three weeks of discovery left. There is no way Nationstar did not anticipate SFR would object. Nationstar did not seek to extend discovery. When SFR did object and did file a motion for protective order, Nationstar still never moved to extend discovery. Discovery is complete in this matter, and the parties should have the dispositive motion deadline reinstated.

## III. CONCLUSON

Based on the foregoing, SFR asks this Court to deny Nationstar's Motion.

DATED this 31st day of May, 2016.

**KIM GILBERT EBRON**

*/s/ Karen L. Hanks*
DIANA CLINE EBRON, ESQ.
Nevada Bar No. 10580
JACQUELINE A. GILBERT, ESQ.
Nevada Bar No. 10593
KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
7625 Dean Martin Drive, Suite 110
Las Vegas, NV 89139
*Attorneys for SFR Investments Pool 1, LLC*

- 12 -

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 31st day of May, 2016, pursuant to FRCP 5, I served via the CMECF filing system, a true and correct copy of the foregoing **RESPONSE TO MOTION TO COMPEL DEPOSITION OF CHRISTOHER HARDIN,** addressed to:

Ariel E. Stern, Esq.
Email: ariel.stern@akerman.com
Christine M. Parvan, Esq.
Email: Christine.parvan@akerman.com
Melanie D. Morgan, Esq.
Email: Melanie.morgan@akerman.com
Akerman LLP
1160 Town Center Drive, Suite 330
Las Vegas, NV 89144
*Attorneys for Nationstar Mortgage, LLC*

/s/ *Karen L. Hanks*
An employee of Kim Gilbert Ebron